JUDGE ABRAMS    14 CV 0620

UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BEVERLEY DOUGLIN, PATRICIA MCALMONT, & NORVA MORRIS-LEWIS,<br><br>                   Plaintiffs,<br>-against-<br><br>GREATBANC TRUST COMPANY, INC,<br><br>                   Defendant. | No.<br><br><br><br>**CLASS ACTION COMPLAINT** |

Plaintiffs Beverley Douglin, Patricia Mcalmont, and Norva Morris-Lewis, by their undersigned attorneys, allege upon personal knowledge as to themselves and their own acts, and upon information and belief as to all other matters, as to which allegations they believe substantial evidentiary support will exist after a reasonable opportunity for further investigation and discovery as follows:

## INTRODUCTION

1. Plaintiffs Beverley Douglin, Patricia Mcalmont and Norva Morris-Lewis are home health aides employed by People Care Holdings, Inc. ("People Care"). Home health aides provide care to poor, sick, frail, and/or aged individuals in the New York metropolitan area. Most of these patients are Medicaid or Medicare recipients. The aides work in patients' homes and in adult care facilities and hospitals. They are among the lowest-paid workers in the region. Each of the Plaintiffs has worked for People Care for fourteen years or more. Each of the Plaintiffs also serves as a delegate – an elected leadership position – in the home health aides' labor union 1199SEIU United Healthcare Workers East ("1199SEIU"). As alleged below, Plaintiffs and the Class they seek to represent have been cheated out of their hard-earned retirement benefits as a result of violations of ERISA's fiduciary rules by the Trustee, GreatBanc

Trust Company, Inc. ("GreatBanc"), that was entrusted with their Employee Stock Ownership Plan.

2. On February 1, 2008, the owners of People Care – Bruce Jacobson and Jerry Lewkowitz – sold 100% of the stock in People Care for $80 million to Defendant GreatBanc in its capacity as Trustee of the People Care Holdings, Inc. Employee Stock Ownership Plan ("ESOP") (the "February 2008 ESOP Transaction"). Defendant GreatBanc paid substantially more than the fair market value for People Care's stock, relied upon inflated financial projections in valuing People Care's stock for the February 2008 ESOP Transaction, and also failed to give appropriate consideration to material facts such as impending wage increases for People Care's workforce due to union organizing and bargaining efforts, as well as probable reductions in the reimbursements People Care would receive for patient services rendered.

## JURISDICTION AND VENUE

3. This action arises under Title I of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, and is brought by Plaintiffs to enjoin acts and practices that violate the provisions of Title I of ERISA, to require the Defendant to make good to the Plan losses resulting from fiduciary violations, to restore to the Plan any profits that have been made by the breaching fiduciaries and parties in interest through the use of Plan assets, and to obtain other appropriate equitable and legal remedies in order to redress violations and enforce the provisions of Title I of ERISA.

4. This Court has subject matter jurisdiction over this action pursuant to ERISA § 502(e)(2), 29. U.S.C. § 1132(e)(2).

5. Venue is proper in this District pursuant to ERISA § 502(e)(2), 29 U.S.C. § 1132(e)(2), because some or all of the events or omissions giving rise to the claims occurred in

this District, and Defendant resides or may be found in this District.

## PARTIES

6.  At all relevant times, Plaintiff Beverley Douglin has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the People Care Holdings, Inc. Employee Stock Ownership Plan ("the ESOP"). Plaintiff Douglin resides in Brooklyn, New York. Plaintiff Douglin has been employed by People Care Holdings, Inc., from in or about October 1999 through the present.

7.  At all relevant times, Plaintiff Patricia Mcalmont has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Plaintiff Mcalmont resides in Brooklyn, New York. Plaintiff Mcalmont has been employed by People Care Holdings, Inc., from in or about February 1997 through the present.

8.  At all relevant times, Plaintiff Norva Morris-Lewis has been a participant, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Plaintiff Morris-Lewis resides in Brooklyn, New York. Plaintiff Morris Lewis has been employed by People Care Holdings, Inc., from in or about November 1999 through the present.

9.  At all relevant times, Defendant GREATBANC TRUST COMPANY ("GreatBanc" or "Trustee") has been the Trustee of the ESOP. Defendant GreatBanc at all relevant times was a "fiduciary" within the meaning of ERISA § 3(21)(A), 29 U.S.C. § 1002(21)(A), because it exercised discretionary authority or discretionary control respecting management of the ESOP and/or exercised authority or control respecting management or distribution of the ESOP's assets, and/or had discretionary authority or discretionary responsibility in the administration of the ESOP. Defendant GreatBanc at all relevant times was also a party in interest under ERISA § 3(14), 29 U.S.C. § 1002(14). Defendant GreatBanc is a

Delaware corporation headquartered in Illinois. GreatBanc maintains an office in New York, New York.

## FACTUAL ALLEGATIONS

10. People Care Holdings, Inc. ("People Care") is a New York corporation headquartered in New York City. People Care is the Sponsor of the ESOP within the meaning of ERISA § 3(16)(B), 29 U.S.C. § 1002(16)(B). People Care adopted the ESOP effective in or about January 1, 2007.

11. At all relevant times, Bruce Jacobson was the Chief Executive Officer of People Care and a Director of People Care. Thus, at all relevant times, Jacobson was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

12. At all relevant times, Jerry Lewkowitz was the President of People Care and a Director of People Care. Thus, at all relevant times, Lewkowitz was a "party in interest" as to the ESOP as defined in ERISA § 3(14), 29 U.S.C. § 1002(14).

13. People Care adopted the ESOP effective January 1, 2007.

14. Prior to the sale of People Care stock to the ESOP, 100% of People Care stock was owned by Jacobson and Lewkowitz or entities that they controlled.

15. People Care appointed GreatBanc as Trustee of the ESOP in or about 2007 for the purpose of representing the ESOP in the proposed ESOP transaction. GreatBanc, in turn, retained Stout Risius Ross ("SRR") as its financial advisor for the proposed ESOP transaction.

16. People Care, Jacobson, and Lewkowitz and their financial advisor, BCC Capital Partners, LLC, provided inflated financial projections to Defendant GreatBanc and SRR in order to increase the sale price of the People Care stock in the proposed ESOP transaction.

17. People Care lost a key municipal contract prior to the February 2008 ESOP

Transaction. On information and belief, the financial projections used for the February 2008 ESOP Transaction did not account for the loss of this contract.

18. In the years leading up to the February 2008 ESOP Transaction, 1199SEIU led a successful organizing effort among the New York City home health aide workforce, including a large portion of People Care's workforce.

19. In 2004, home health care workers represented by 1199SEIU conducted a strike in New York City demanding an increase in hourly wages from $7 to $10. Five staffing agencies, including the Visiting Nurse Service of New York, agreed to the workers' demand for a living wage of $10 per hour. 1199SEIU and its members demanded that other home health care staffing agencies, including People Care, also agree to a $10 per hour wage rate.

20. In 2005, employees represented by 1199SEIU conducted a strike against People Care. 1199SEIU and People Care negotiated the first collective bargaining agreement (CBA) for People Care home health aides in New York City in or about 2005. In 2006, 1199SEIU organized People Care home health aides on Long Island. Although the wage increases in these initial contracts with People Care fell short of the $10 per hour living wage sought by 1199, 1199SEIU made it clear that it would demand and press for increases to $10 per hour and improved benefits in future contracts.

21. At the time of the February 2008 ESOP Transaction, People Care and 1199SEIU were negotiating the terms of a new CBA. In addition to the 1199SEIU's demand for a $10 per hour minimum wage, the union was also seeking medical and pension benefits for represented People Care employees. People Care and 1199SEIU did not sign their 2008 CBA until after the close of the February 2008 ESOP Transaction.

22. Thus, at the time of the February 2008 ESOP Transaction, it was clear that People

Care was facing growing demands by its union-represented workforce for a substantial increase in wages and benefits. People Care was either going to have to pay higher wages and benefits to its union-represented employees or face the potential of crippling job actions and strikes.

23. Most of People Care's revenue ultimately came from payments by government agencies, i.e., Medicare and Medicaid. Moreover, People Care was generally a subcontractor to agencies that contracted with these government agencies.

24. People Care's revenues were heavily dependent upon its subcontracts with a small number of contracting agencies and its contracts with the New York City Human Resources Administration and Department for the Aging. Thus, People Care was dependent upon a small number of contracts and subcontracts for its revenues.

25. At the time of February 2008 ESOP Transaction, Medicare and Medicaid were seeking to change reimbursement policies for home health care in order to reduce government expenditures. For example, as of June 2007, the Centers for Medicare & Medicaid Services (CMS) was proposing to reduce base payment rates by 2.75% in home health care settings. In a June 2007 report by the Medicare Payment Advisory Commission ("MedPAC"), the Commission criticized the high profit margins of home health care agencies and stated that "[m]any factors suggest that the current system overpays providers and pays inaccurately for some patients."

26. On February 1, 2008, GreatBanc, in its capacity as Trustee of the ESOP, purchased 100% of the common stock of People Care from Jacobson and Lewkowitz (or entities controlled by them) in consideration for payment of $80 million.

27. On information and belief, the February 2008 ESOP Transaction was financed by a Senior Loan and a bridge loan from First American Bank to People Care. People Care, in turn,

loaned the purchase price to the ESOP. Shortly after the Transaction, Jacobson and Lewkowitz purchased Junior Notes from People Care which replaced the bank bridge loan.

28. The February 2008 ESOP Transaction left People Care saddled with approximately $80 million in debt. The February 2008 ESOP Transaction burdened People Care with excessive debt and limited People Care's liquidity and operational flexibility.

29. As part of the February 2008 ESOP Transaction, Jacobson and Lewkowitz received warrants enabling them to buy back a substantial percentage of People Care after the ESOP repays the acquisition loan. The warrants' exercise price is set low in order to provide additional consideration to Jacobson and Lewkowitz.

30. Defendant GreatBanc relied upon a valuation report prepared by SRR for purposes of the February 2008 ESOP Transaction. On information and belief, the valuation report failed to give appropriate consideration to the adverse business developments and risk factors alleged above, including 1199SEIU's demands for wage and benefit increases for represented employees, and prospective changes in reimbursements for home health providers by Medicare and Medicaid, and potential reductions in the volume of assigned patient-care hours.

31. In reviewing the proposed ESOP Transaction, Defendant GreatBanc failed to give appropriate consideration to the adverse business developments and risk factors alleged above.

32. At all relevant times, Defendant GreatBanc had a policy of paying sales commissions or bonuses to employees who worked on ESOP transactions. The employees who marketed GreatBanc's ESOP services to prospective clients and executed ESOP transactions in which GreatBanc acted as Trustee were sometimes referred to as "salespersons" or "salespeople."

33. The two GreatBanc employees who were the "salespeople" for the People Care

ESOP Transaction were Karen Bonn and Stephen Hartman. Upon information and belief, Ms. Bonn and Mr. Hartman received commissions or bonuses for completing the February 2008 ESOP Transaction.

34.  In addition, GreatBanc seeks to remain as Trustee of an ESOP following completion of the initial transaction in which the ESOP purchases stock from the owners of a corporation. GreatBanc charges an annual fee to the employer or ESOP if it continues to serve as Trustee of an ESOP following the initial stock transaction. Obviously, GreatBanc will only receive such fees if the initial transaction is consummated, i.e., GreatBanc will not receive annual trustee fees if it rejects the initial stock transaction. The expectation of being retained as Trustee and receiving annual fees for such works gives GreatBanc a financial incentive to approve ESOP transactions in its role as Trustee.

35.  The adverse business developments and risk factors alleged above did, in fact, adversely impact People Care's revenues and net income following the February 2008 ESOP Transaction.

36.  The ESOP's People Care stock is now worth less than 2% of the $80 million purchase price.

## CLASS ACTION ALLEGATIONS

37.  Plaintiffs bring the First and Second Claims for Relief for violations of ERISA §§ 502(a)(2) and 502(a)(3), 29 U.S.C. §§ 1132(a)(2) and 1132(a)(3), as a class action pursuant to Fed. R. Civ. P. 23 (a) and (b), on behalf of all persons who were participants in the ESOP on February 1, 2008 or at any time thereafter, and/or beneficiaries of ESOP participants on February 1, 2008 or at any time thereafter (hereinafter "Plaintiff Class"). Excluded from the Plaintiff Class are Jacobson, Lewkowitz and their immediate families; the officers and directors of Defendant

GreatBanc or of any entity in which a Defendant has a controlling interest; and legal representatives, successors, and assigns of any such excluded persons.

38.     The Plaintiff Class is so numerous that joinder of all members is impracticable. Plaintiffs are informed and believe, and on that basis allege, that over 4,000 employees and former employees are participants, as defined in ERISA § 3(7), 29 U.S.C. § 1002(7), in the ESOP. Although the exact number and identities of Class Members are unknown to Plaintiffs at this time, this information is easily ascertainable from the ESOP through discovery of its records.

39.     Questions of law and fact common to the Plaintiff Class as a whole include, but are not limited to, the following:

   i. Whether Defendant GreatBanc engaged in a prohibited transaction under ERISA by permitting the ESOP to purchase People Care stock from Jacobson and Lewkowitz in February 2008 for more than adequate consideration;

   ii. Whether Defendant GreatBanc engaged in a prudent investigation of the proposed purchase of People Care stock by the ESOP;

   iii. Whether GreatBanc breached its duty of loyalty by making commission or bonus payments to GreatBanc employees Hartman and/ or Bonn only if the ESOP transaction was consummated;

   iv. Whether Defendant GreatBanc breached a fiduciary duty to ESOP participants by causing the ESOP to purchase People Care stock in February 2008 for more than fair market value;

   v. Whether Defendant GreatBanc breached its fiduciary duties to ESOP participants by failing to adequately investigate and remedy the overpayment by the ESOP in the February 2008 ESOP Transaction;

      vi.     The amount of damages suffered by the ESOP as a result of Defendant's fiduciary violations.

40.    Plaintiffs' claims are typical of those of the Plaintiff Class. For example, Plaintiffs, like other ESOP participants in the Plaintiff Class, suffered a diminution in the value of their ESOP accounts when the ESOP purchased People Care stock owned by Jacobson and Lewkowitz for more than fair market value, and they continue to suffer such losses in the present because Defendant has failed to correct the overpayment by the ESOP.

41.    Plaintiffs will fairly and adequately represent and protect the interests of the Plaintiff Class. Plaintiffs have retained counsel competent and experienced in complex class actions, ERISA, and employee benefits litigation.

42.    Class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications which would establish incompatible standards of conduct for Defendant, and/or because adjudications with respect to individual Class members would as a practical matter be dispositive of the interests of non-party Class members.

43.    In addition, Class certification of Plaintiffs' First and Second Claims for Relief for violations of ERISA is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendant has acted or refused to act on grounds generally applicable to the Class, making appropriate declaratory and injunctive relief with respect to Plaintiffs and the Class as a whole. The members of the Class are entitled to declaratory and injunctive relief to remedy Defendant's fiduciary violations.

44.    The names and addresses of the Plaintiff Class are available from the ESOP.

Notice will be provided to all members of the Plaintiff Class to the extent required by Rule 23.

## CLAIMS FOR RELIEF

### FIRST CLAIM FOR RELIEF

[Breach of Fiduciary Duty Under ERISA §§ 502(a)(2) and (a)(3),

29 U.S.C. §§ 1132(a)(2) and (a)(3)]

45. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

46. ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1), requires, *inter alia*, that a plan fiduciary discharge his or her duties with respect to a plan solely in the interest of the participants and beneficiaries and with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims. The fiduciary duty of loyalty entails a duty to avoid conflicts of interest and to resolve them promptly when they occur. A fiduciary must always administer a plan with an "eye single" to the interests of the participants and beneficiaries, regardless of the interests of the fiduciaries themselves or the plan sponsor.

47. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

48. ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring an action for relief under ERISA § 409.

49. ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring an

action to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

50. Defendant GreatBanc breached its duties under ERISA § 404(a)(1), 29 U.S.C. § 1104(a)(1). These breaches include but are not limited to the following: causing the Plan to pay more than fair market value for People Care stock; failing to conduct a thorough and independent review and adequately consider whether the February 2008 purchase of People Care stock from Jacobson and Lewkowitz was in the best interests of the Plan participants; causing the ESOP to take on excessive debt in connection with the February 2008 ESOP Transaction; failing to undertake an adequate and independent valuation of the People Care stock prior to the Transaction; failing to make certain that reliance on any and all valuation experts' advice was reasonably justified under the circumstances of the transaction; failing to adequately consider all material facts in negotiating the February 2008 ESOP Transaction; failing to make an honest, objective effort to read the valuation reports, understand them, and question the methods and assumptions that did not make sense; and failing to remedy the ESOP's overpayment for People Care stock at any time between February 2008 and the present.

51. ERISA § 410 prohibits agreements that purport to relieve a fiduciary from responsibility or liability for any fiduciary duty. 29 U.S.C. § 1110(a). Specifically, § 410 states that "any provision in an agreement or instrument which purports to relieve a fiduciary from responsibility or liability for any responsibility, obligation, or duty under this part shall be void as against public policy." 29 U.S.C. § 1110(a).

52. Any indemnification agreement between GreatBanc, on the one hand, and People Care or the ESOP, on the other hand, violates ERISA § 410 and is therefore null and void.

53. Defendant's acts and omissions caused millions of dollars of losses to the Plan in

an amount to be proven more specifically at trial.

## SECOND CLAIM FOR RELIEF

[Engaging in Prohibited Transaction Forbidden by ERISA §§ 406(a)-(b),

29 U.S.C. §§ 1106(a)-(b)]

54. Plaintiffs incorporate the preceding paragraphs as though set forth herein.

55. ERISA § 406(a), 29 U.S.C. § 1106(a), requires that a plan fiduciary "shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect sale or exchange, or leasing of any property between the plan and a party in interest," or a "transfer to, or use by or for the benefit of, a party in interest, of any assets of the plan."

56. ERISA § 406(b), 29 U.S.C. § 1106(b), mandates that a plan fiduciary shall not "act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants," or "deal with the assets of the plan in his own interest or for his own account," or "receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan."

57. ERISA § 408(e), 29 U.S.C. § 1108(e) provides a conditional exemption from the prohibited transaction rules for sale of employer securities to or from a plan if a sale is made for adequate consideration. ERISA § 3(18)(B) defines adequate consideration as "the fair market value of the asset as determined in good faith by the trustee or named fiduciary." ERISA's legislative history and existing case law make clear that ERISA § 3(18)(B) requires that the price paid must reflect the fair market value of the asset, and the fiduciary must conduct a prudent investigation to determine the fair market value of the asset.

58. Defendant GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), in the February 2008 ESOP Transaction, and the prohibited transaction did not meet the conditional exemption requirements of ERISA § 408(e), 29 U.S.C. § 1108(e). Defendant GreatBanc failed to ensure that the ESOP paid no more than fair market value for the People Care stock purchased by the ESOP from Jacobson and Lewkowitz in February 2008. Specifically, the ESOP paid more than fair market value for shares sold by Jacobson and Lewkowitz.

59. Defendant GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to purchase People Care stock for greater than adequate consideration in February 2008; causing the ESOP to borrow funds for the February 2008 ESOP Transaction, even though the purchase price was inflated; and causing the ESOP to take on excessive debt in connection with the February 2008 ESOP Transaction. Specifically, the ESOP paid more than fair market value for shares sold by Jacobson and Lewkowitz, and GreatBanc failed to conduct an independent and prudent investigation into the fair market price before entering into the stock purchase agreement with People Care, Jacobson, and Lewkowitz. GreatBanc failed to, among other things, ensure that it secured a reliable and independent expert appraisal of the fair market value of People Care stock prior to the February 2008 ESOP Transaction; and make certain that reliance on any and all valuation experts' advice and People Care's financial projections were reasonably justified under the circumstances of the Transaction.

60. ERISA § 409, 29 U.S.C. § 1109, provides, *inter alia*, that any person who is a fiduciary with respect to a plan and who breaches any of the responsibilities, obligations, or duties imposed on fiduciaries by Title I of ERISA shall be personally liable to make good to the

plan any losses to the plan resulting from each such breach, and additionally is subject to such other equitable or remedial relief as the court may deem appropriate, including removal of the fiduciary.

61.     ERISA § 502(a)(2), 29 U.S.C. § 1132(a)(2), permits a plan participant to bring a suit for relief under ERISA § 409.

62.     ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), permits a plan participant to bring a suit to obtain appropriate equitable relief to enforce the provisions of Title I of ERISA or to enforce the terms of a plan.

63.     Defendant has caused millions of dollars of losses to the ESOP by the prohibited transactions in an amount to be proven more specifically at trial.

## PRAYER

Wherefore, Plaintiffs pray for judgment against the Defendant on each Claim for Relief and for the following relief:

**As to the First Claim for Relief:**

- A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;
- B. Declare that Defendant has breached its fiduciary duties to the Plaintiff Class and/or knowingly participated in breaches of fiduciary duty;
- C. Enjoin Defendant from further violations of its fiduciary responsibilities, obligations and duties;
- D. Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the ESOP and/or barring Defendant from serving as fiduciary or Trustee of the ESOP in the future, and appointing a new independent fiduciary as Trustee of the ESOP;

E. Order that Defendant make good to the ESOP and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the ESOP;

F. Order that Defendant provide other appropriate equitable relief to the ESOP, including but not limited to, surcharge, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

G. Declare that any indemnification agreement between the Defendant and People Care or the ESOP violates ERISA § 410, 29 U.S.C. § 1110, and is therefore null and void.

H. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund;

I. Order Defendant to disgorge any fees it received in conjunction with the February 2008 ESOP Transaction;

J. Order Defendant to pay prejudgment interest; and

K. Award such other and further relief as the Court deems equitable and just.

**As to the Second Claim for Relief:**

A. Certify this action as a class action pursuant to Fed. R. Civ. P. 23, certify the named Plaintiffs as class representatives and their counsel as class counsel;

B. Declare that Defendant GreatBanc has breached its fiduciary responsibilities and/or duties as a party in interest to the Plaintiff Class;

C. Enjoin Defendant from further prohibited transactions and violations of its fiduciary responsibilities, obligations and duties;

D. Issue a preliminary and permanent injunction removing Defendant as fiduciary and Trustee of the ESOP and/or barring Defendant from serving as fiduciary or Trustee of the

ESOP in the future, and appointing a new independent fiduciary as Trustee;

E. Declare that Defendant GreatBanc engaged in a prohibited transaction in violation of ERISA §§ 406(a)-(b), 29 U.S.C. §§ 1106(a)-(b), by causing the ESOP to purchase People Care stock from Jacobson and Lewkowitz for more than adequate consideration;

F. Order that Defendant make good to the ESOP and/or to any successor trust(s) the losses resulting from its breaches and restoring any profits it has made through use of assets of the ESOP;

G. Order that Defendant provide other appropriate equitable relief to the ESOP, including but not limited to, surcharge, providing an accounting for profits, imposing a constructive trust and/or equitable lien on any funds wrongfully held by Defendant;

H. Order Defendant to disgorge any fees it received in conjunction with the February 2008 ESOP Transaction;

I. Order Defendant to pay prejudgment interest;

J. Award Plaintiffs reasonable attorneys' fees and costs of suit incurred herein pursuant to ERISA § 502(g), 29 U.S.C. § 1132(g), and/or for the benefit obtained for the common fund; and

K. Award such other and further relief as the Court deems equitable and just.

Dated:   January 31, 2014
         New York, New York

                                        Respectfully submitted,

                                        LEVY RATNER, P.C.

                                        By: _____
                                            Richard A. Levy